756 So.2d 224 (2000)
Alexis MARTI, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D98-1163.
District Court of Appeal of Florida, Third District.
April 26, 2000.
*225 Roderick D. Vereen, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellee.
Before COPE, SHEVIN and SORONDO, JJ.
SORONDO, J.
Alexis Marti (defendant) appeals from a final judgment of conviction and sentence. We affirm.
Defendant was charged by amended information with attempted sexual battery with a deadly weapon or force, attempted second degree murder and burglary with an assault. Prior to jury selection, he filed a motion to discharge his court appointed attorney. In a written motion filed by defendant pro se, he alleged that his lawyer was not competent to properly prepare a defense and that she had failed to communicate with him personally or via the telephone and failed to review with him any progress on the case. He asserted that as a result his trust in her had deteriorated to the point where he did not believe in her ability to properly represent him. He further asserted that he was not requesting self-representation.
The trial court found that defense counsel was competent and denied the motion without making any inquiry of defendant or counsel.
*226 The facts of the case follow: Gladys Valdez, a teacher at Riverside Elementary, testified that on October 31, 1995, she was assaulted in the school's covered parking garage. She related that she had dropped a bag of candy and that a man who she later identified as her assailant helped her to pick it up. Afterward, she could not locate her car keys and he suggested that she might have left them in her vehicle. When she returned to the car to look, the assailant pushed her into the vehicle and began hitting her in the face. He punched her repeatedly and tried to raise her dress. She struggled and he told her if she stopped fighting he would stop hitting her. Valdez began honking the horn and kicking at him.
Valdez testified that at one point her assailant began choking her so hard that thought she blacked out for a few moments. Valdez recalled getting out of the vehicle and collapsing on the floor of the garage. She saw the assistant principal, Dr. Dukes, ran toward him and fell into his arms.
Valdez was treated at the hospital, where her injuries were photographed. She was shown "mug" shots and was initially unable to identify anyone. On November 9, 1995, she was shown a photographic line-up and immediately identified defendant as her assailant. Valdez also identified her assailant in court.
Gregory Kelly (another teacher), Dr. Dukes, and Kevin Agard, the school security guard, all testified regarding the incident. Kelly and Agard were walking nearby when they heard the car horn. Kelly and Agard saw a man wearing a polka-dot shirt and greenish-brown pants walk past them and then Valdez appeared, yelling "help me." Kelly testified that she was covered in blood and Agard testified that she appeared battered. The assailant took off running and Kelly and Agard gave chase before losing him. During the chase, Ms. Valdez's assailant got his pants leg caught on the fence he was trying to climb and fell to the ground, landing on his face and sustaining a laceration to the bridge of his nose.
Kelly identified defendant as the assailant, but testified that he had been unable to identify anyone when shown a photo array by police.[1] Agard testified that he was unable to identify anyone when initially shown photos by police, but when he was shown a photo array on November 9th, he was able to identify the assailant. Dr. Dukes was unable to identify the assailant.
Defendant's friend, Julio Calero, testified that he went out with defendant the night before the assault. Calero could not recall what defendant was wearing but testified that he may have told the police that defendant wore a shirt with polkadots. Calero awoke the next morning to find defendant asleep on his couch wearing only shorts and a t-shirt. Calero testified that Enrique Acosta had brought defendant there.
Acosta testified that he was in New York on the morning of October 31, 1995. However, he related that sometime in October, defendant came to his house in the early morning hours stating that he had been mugged, with blood on his face. Acosta offered to help defendant find the person that mugged him. Defendant rejected the offer and asked Acosta drive him to Calero's house. Acosta could not recall what defendant was wearing.
Officer Deborah Payne testified that witnesses were shown photos after the incident but no one identified the perpetrator. After defendant's arrest on November 9th, photos were taken of him and a photographic line-up was compiled. Officer Payne testified that Kelly was not able to pick out any person, while Agard and Valdez identified defendant.
*227 Lt. Rodriguez testified that he questioned both Acosta and Calero regarding the clothing defendant wore on October 30th and 31st. He was told by both that defendant was wearing a polka-dot shirt and khaki pants.
Defendant was found guilty of simple battery, attempted second degree murder and burglary with an assault. He was sentenced to 364 days on count one, fifteen years as a habitual violent offender on count two and life imprisonment on count three.
Defendant raises two issues in this appeal. First, he claims that the trial court failed to conduct an adequate Nelson[2] inquiry. The state concedes that no Nelson inquiry was conducted but argues that none was required because defendant's allegations in support of his motion to discharge his court-appointed attorney were insufficient to trigger the need for an inquiry. Defendant's second claim of error is that in the wake of the Florida Supreme Court's decision in State v. Gray, 654 So.2d 552 (Fla.1995), the crime of attempted second-degree murder is a nonexistent crime, or, in the alternative, if it does exist, the evidence presented by the state was insufficient. The state argues that this Court's own precedent, as well as that of the Florida Supreme Court, establish the existence of the offense and that the evidence presented in the lower court was sufficient to establish its existence in this case.
Addressing defendant's second argument first, in Pitts v. State, 710 So.2d 62 (Fla. 3d DCA 1998), this Court stated:
Since Gray was confined, by its terms, to the offense of attempted first degree felony murder, and since the Florida Supreme Court has expressly recognized the existence of the crime of attempted second degree murder and further, has held that the crime is one requiring only general intent, not the specific intent to kill, we reject the defendant's argument on this point.
Id. at 62-63 (citation omitted). We adhere to that position but certify the following question to be one of great public importance:

DOES THE CRIME OF ATTEMPTED SECOND DEGREE MURDER EXIST IN FLORIDA?
See Brown v. State, 733 So.2d 598 (Fla. 5th DCA), review granted, 744 So.2d 452 (Fla. 1999).
We disagree with defendant's alternative argument that if the crime exists, the state failed to prove it in this case. Ms. Valdez testified that defendant choked her "very hard" and that at one point she thought she had died. She further testified that she thought she had lost consciousness at one point. Although she had previously made a statement to the effect that she had not actually lost consciousness, her testimony as to the choking and the beating she received was sufficient to constitute the crime of attempted second degree murder.
As concerns the defendant's other issue on appeal, we agree that the court erred by not conducting a Nelson inquiry but conclude that the error was harmless.
On September 2, 1997, defendant filed a written motion to discharge his court appointed attorney. In it he alleged that his attorney was "not competent to prepare a defense" and that "there [was] genuinely a conflict-of-interest between court-appointed attorney and defendant thus violating Defendant's right to `effective assistance of counsel.'" The motion further stated that counsel had failed to communicate with defendant personally and refused to talk to him on the telephone. As a result, the motion stated that defendant's trust in his attorney had deteriorated "to the point where there is no longer trust in her work nor in her ability to properly represent Defendant." The motion concluded that "court-appointed counsel is not only incompetent, *228 but unwilling to prepare an adequate defense and proceed to trial."[3]
On the morning of trial, September 2, 1997, defendant's appointed counsel brought defendant's complaint to the trial judge's attention. Thereafter, the following exchange took place:
[DEFENSE COUNSEL]: Judge, my client would like to address the court.
[DEFENDANT]: Your honor, at this time I would like to enter this motion to dismiss my attorney, I don't think she is competent enough, Your Honor.
[COURT]: You are entitled to counsel but you are not entitled to counsel of your choice. This is your trial date, we have been on hold on your case for months and months and months
[DEFENDANT]: Yeah, because we have been on hold, be on hold, she had
[COURT]: Sir, do not interrupt this Court ever when I am speaking, be quiet, those are the rules.
Now your lawyer has been getting ready, she is ready, she is competent. She's tried dozens of cases before this Court and she is a very fine attorney. She is not being discharged, we are going forward.
[DEFENDANT]: I want to make the record clear that she has not been competent during this, she is not competent to represent me.
[COURT]: I don't think that you can make that decision, sir.
[DEFENDANT]: I just want to make the record clear on that.
[COURT]: Okay.
[PROSECUTOR]: He can be given a choice of representing himself.
[DEFENDANT]: I am not requesting a self representation.
[COURT]: We are not doing that and we are going forward.
The record is clear, and the state concedes that the trial judge failed to conduct a Nelson inquiry.[4] We are unwilling, however, to accept the state's position that the defendant's motion to discharge counsel was facially insufficient to require an inquiry. The motion specifically alleged incompetence of counsel, an unwillingness to prepare an adequate defense, and a conflict of interest. Nelson requires an inquiry "where a defendant, before the commencement of trial, makes it appear ... *229 that he desires to discharge his court-appointed counsel." 274 So.2d at 258. The mere expression of a desire to discharge appointed counsel necessitates an inquiry "as to the reason for the request to discharge." Id. In Mosley v. State, 720 So.2d 606, 608 (Fla. 5th DCA 1998), the Court stated:
A lower court abuses its discretion when it fails to provide the defendant with an opportunity to explain why he or she objects to court-appointed counsel or fails to conduct an adequate inquiry regarding defendant's desire to discharge defense counsel.
(Emphasis added). Likewise, in Rios v. State, 696 So.2d 469 (Fla. 2d DCA 1997), the Second District Court of Appeal stated:
A proper Nelson inquiry begins with ascertaining the reason for an attempt to change attorneys ...
Because the trial court in the case on review made no attempt to ascertain the basis for the appellant's wish to change attorneys ... we find that the trial court did abuse its discretion in this case. The trial court failed to conduct any inquiry at all, except to ask if the appellant had a private attorney ready and willing to proceed. This put the cart before the horse. The trial court neglected to satisfy itself on threshold Nelson matters such as whether the appellant's request to change attorneys was prompted by a belief that counsel was rendering ineffective assistance and, if so, upon what evidence were the allegations of ineffective assistance based, and, based on the information garnered from the defendant and counsel was providing effective assistance.
(Emphasis added). See also Marshall v. State, 665 So.2d 307 (Fla. 2d DCA 1995); Williams v. State, 532 So.2d 1341 (Fla. 4th DCA 1988). Clearly, Nelson contemplates an immediate dialogue with a defendant who makes the motion.
Where the reason for the desired discharge is incompetence, the court "should then make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." Id. at 259. It is at this point that the extent of the inquiry will be governed by the specificity of the defendant's claim as to his lawyer's incompetence. See Lowe v. State, 650 So.2d 969 (Fla.1994). In the present case the trial judge never asked the defendant why he felt that his attorney was incompetent. Nor did the judge inquire of defense counsel on this critical issue. See Burgos v. State, 667 So.2d 1030 (Fla. 2d DCA 1996)(trial court committed error by not making inquiry of defense counsel during Nelson inquiry).
We acknowledge that the filing of multiple motions to discharge court-appointed counsel can severely test judicial patience. In Burgos, the Second District Court of Appeal stated:
We realize that the procedures mandated by these cases will often involve a tedious and time-consuming process designed to test the frustration and patience level of the most able trial judge... We must emphasize, however, the importance of strict adherence to these requirements.
667 So.2d at 1032. We further recognize that a judge's frustrations will be enhanced when he or she perceives that the motions are made as dilatory tactics which require judicial effort best dedicated to more substantive matters. In the present case, it is clear that the trial judge was prepared to conduct a long overdue trial and was in no mood to hear, for the fourth time, that the defendant was unhappy with his lawyer. Further aggravating the situation was the fact that the attorney in question is the assistant public defender assigned to this particular courtroom, whom the judge knew to be a capable, well-prepared and conscientious lawyer. Nevertheless, regardless of the level of *230 frustration experienced by the trial judge, a full Nelson inquiry is mandatory where the defendant moves to discharge his court-appointed attorney. The failure to conduct one in this case was error.
The only remaining question is whether the court's error was harmless. Because the evidence establishing defendant's guilt was overwhelming, and the record is devoid of any evidence of incompetence by counsel during the trial, we are convinced beyond a reasonable doubt that the error was harmless. See Moultrie v. State, 679 So.2d 25 (Fla. 4th DCA 1996); Kott v. State, 518 So.2d 957 (Fla. 1st DCA 1988).
Affirmed.
NOTES
[1] The record is unclear as to whether a picture of the defendant was contained within the array.
[2] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).
[3] The motion alluded to the fact that defendant had filed three previous motions to discharge his attorney. We have thoroughly reviewed the record and are unable to find these motions or determine whether Nelson inquiries were conducted on those occasions. Because defendant has not raised these prior motions in this appeal, we presume that they are irrelevant to this analysis.
[4] We note that the prosecutor failed to advise the trial judge of the need for a full Nelson inquiry even though her comment on the possibility of self-representation suggests that she may have been concerned over the court's failure to inquire. In a case where the trial court reversibly erred by failing to conduct an appropriate Nelson inquiry, the Fourth District Court of Appeal addressed the prosecutor's role in this issue:

During the court's pretrial colloquy with defendant and counsel on the motion, the state stood silently by. We think that the interest of the state in avoiding repeat criminal trials for the kinds of reasons involved here strongly suggests that the prosecutor should not stand mute in such matters. Instead the state's attorney should speak up and join in the request for a Nelson inquiry to help the trial judge avoid an obvious reversible error. It does not serve the system well for the prosecutor to stand silently in the background when it begins to appear that the trial judge is about to bypass holding a necessary inquiry, the lack of which may result in a reversal. This is especially true on pretrial matters of alleged ineffectiveness of trial counsel, where the state has no real concern about which particular lawyer represents the defendant, and the needed inquiry may take but a few minutes anyway. A timely comment from the state's attorney might have resulted in the required inquiry.
Graves v. State, 642 So.2d 142, 144 (Fla. 4th DCA 1994). Although the prosecutor's involvement may incur the judge's wrath, it will more likely remind the judge that a moment of patience might go a long way towards achieving the finality all judges seek.