852 So.2d 412 (2003)
Angela Denise MALONE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-1931.
District Court of Appeal of Florida, Fifth District.
August 22, 2003.
James B. Gibson, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, J.
Angela D. Malone appeals her conviction of robbery with a firearm in violation of section 812.13(2)(a), Florida Statutes (2000). Malone contends that the trial *413 court erred in failing to adequately explore the basis for her request to discharge her court-appointed attorney, Kelly Sims, and further erred by allowing her to represent herself. We agree and reverse for a new trial.
After Malone was charged with armed robbery, the trial court determined she was indigent and appointed Sims as her counsel. Just prior to jury selection, the following discussion occurred among the trial judge, Malone and Sims:
THE DEFENDANT: I feel I need a new attorney.
THE COURT: I don't care how you feel. You've got some facts?
THE DEFENDANT: I feel like my attorney isn't in my best interest. I asked him to fill out motions for me and he just wouldn't do it.
THE COURT: Because he's the lawyer and you are not a lawyer, right?
THE DEFENDANT: Right.
THE COURT: So.
THE DEFENDANT: But he's working for me.
THE COURT: But he's the lawyer, you are not, so he does what legally is permissible, not something that you want.
THE DEFENDANT: My understanding, when you are dealing with attorneys, they are suppose to work for you.
THE COURT: That's right, but they are not to do what you want. If your motion didn't make sense or legally insufficient, then he has a right not to do it.
Let's get this thing over with. You are not getting a new lawyer. You can go to trial if you want to or you can go to trial with Mr. Sims, that's your choice.
Sit down, let's bring the jury in.
THE DEFENDANT: I guess I'm going to have to do it by myself. I guess I'm going to have to go by myself.
THE COURT: You want to discharge Mr. Sims, is that it?
DEFENDANT: I might need him for some questions.
THE COURT: No, I don't do that. Mr. Sims is either your lawyer or he's back at his office doing what he wants to do. You want a lawyer, which would make sense, because you are looking at going to prison for the rest of your life and probably getting out when you are in a lying box [sic]. I'd have a lawyer if I were you, but it's entirely up to you.
MR. SIMS: May I have a moment with her, your honor?
THE COURT: Sure.
(Whereupon, attorney confers with Defendant off the record)
THE COURT: What else?
MR. SIMS: You want me to tell the judge what it is you want to do?
THE DEFENDANT: I have to go by myself.
THE COURT: Why?
THE DEFENDANT: Um
THE COURT: You are looking at going to prison for the rest of your life and you want to try to convince a jury that you shouldn't be found guilty all by yourself instead of having a criminal lawyer assisting you, is that what you are telling us?
How much education do you have?
THE DEFENDANT: 12th Grade.
THE COURT: How many times have you defended yourself in court?
THE DEFENDANT: None.
THE COURT: Then why are you trying to do it now. It doesn't make sense to me? You are entitled to do it if you *414 want to, it's your life. You can throw it away, but it sure doesn't make sense to me to do it that way. Is that what you want to do.
THE DEFENDANT: I need some assistance. I need a new attorney.
THE COURT: You are not getting a new attorney.
THE DEFENDANT: I know I need some assistance.
THE COURT: Go ahead and sit down, we are getting ready to start the trial.
MR. SIMS: That would be with me, Your Honor?
THE COURT: Yes, sir.
THE DEFENDANT: I want to do it myself.
THE COURT: I didn't hear what she said.
THE DEFENDANT: I need to do it myself. I need some assistance, but
THE COURT: You want to try this case by yourself without a lawyer, is that what you are saying? You understand the dangers of doing something stupid like that?
THE DEFENDANT: Without Mr. Sims, I guess I'm going to have to do it by myself.
THE COURT: I didn't understand. The trial would go a whole lot quicker if you don't have a lawyer on your side to help you.
MR. SIMS: She informs me that she would like an attorney just not me, and if it were me, she would rather do it by herself. She would like to have me just because I have a little bit of knowledge in her eyes to be on standby position and I wouldn't mind doing that, like a little book in the corner if she has a questions, but if Your Honor doesn't feel that's appropriate, then she has stated to me that she would rather try it herself because she has more faith in herself in this case than in me.
THE COURT: That's the stupidest decision that I've ever heard, but she's entitled to make stupid decisions according to the Supreme Court. Lawyer's knowledge and experienceLawyer's Mr. Sims has the experience and knowledge in the entire process, he will argue for your side during the whole trial and present the best legal argument for your defense. Jury selection qualification are governed by a number of legal procedures, he can call witnesses and question them for you, he can make closing argument for you.
* * *
THE COURT: You want Mr. Sims or you want to go by yourself?
Let me ask you this. How is it that you plan to do jury selection?
THE DEFENDANT: What do you mean how?
THE COURT: You said you don't want Mr. Sims[.] You want to be by yourself[.] You want to do jury selection[.] How are you going to do that?
THE DEFENDANT: Listen to their stories and choose which once [sic] I like the best.
THE COURT: Okay. Is that what you want to do, you want to send Mr. Sims home?
THE DEFENDANT: I know I need some assistance.
THE COURT: You got some assistance. Now what you are telling me now is you don't want Mr. Sims and I'm telling you that Mr. Sims is the only lawyer you are going to get because I'm not going to appoint a lawyer on the morning of trial. Mr. Sims is probably one of the premiere defense lawyers in this community.

*415 You are board certified, aren't you, Mr. Sims?
MR. SIMS: Yes, sir.
THE DEFENDANT: Okay. I'm ready.
THE COURT: So what do you want to do?
MR. SIMS: You got to tell him something.
THE DEFENDANT: I guess I'm on my own.
THE COURT: Okay. Thank you, Mr. Sims. You are excused. She's fired you.
MR. SIMS: May I turn over the documentation, Your Honor?
THE COURT: Yes, sir.
After defense counsel was discharged, the trial proceeded and Malone was found guilty as charged. On appeal, Malone contends that the trial court failed to conduct an adequate inquiry regarding her decision to discharge her court-appointed counsel, as required by Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).
Nelson established the procedure a trial court must follow, consistent with an indigent's right to effective representation, when a defendant expresses a desire to discharge court-appointed counsel prior to trial because of alleged incompetency. Nelson said:
If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his court-appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Id. at 258-59; see also Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988)(adopting procedure of Nelson), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988).
If the court finds that the defendant does not have a legitimate complaint, then the court is required to advise the defendant that if his request to discharge is granted, the court is not required to appoint substitute counsel and that the defendant would be exercising his right to represent himself. Trease v. State, 768 So.2d 1050, 1053 (Fla.2000) (citing Hardwick, 521 So.2d at 1074). If a defendant continues to desire to discharge counsel, the court must determine whether the defendant is knowingly and intelligently waiving the right to court-appointed counsel, as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The failure to conduct a proper Nelson hearing is reversible error. See Johnson v. State, 629 So.2d 1050, 1051 (Fla. 2d DCA 1993).
"Requests for self-representation and claims of ineffective assistance of court-appointed counsel present a real quagmire to the trial judges, who must deal with them. Such difficulties are understandable, since the case law in these areas is voluminous, complex, and at times downright inconsistent." Angela D. McCravy, Self-Representation and Ineffective Assistance of Counsel: How Trial Judges Can Find Their Way Through the Convoluted Legacy of Faretta and Nelson, 71 Fla. B.J. 44, 44 (Oct.1997). We, like other courts, "recognize the burden placed *416 on a trial court by Nelson and Faretta when confronted by a defendant, who is often obstreperous, claiming ineffective assistance of court-appointed counsel." Jones v. State, 658 So.2d 122, 126 (Fla. 2d DCA 1995). These tedious and time-consuming requirements can test the frustration and patience of the most experienced trial judge, particularly when the issue "comes on the day of trial and a jury venire of inconvenienced citizens is impatiently waiting in the courthouse for the jury selection process to begin." Id. While there are no "magic words" necessary to properly conduct a Nelson or Faretta inquiry, the burden is on the trial court to strictly adhere to the requirements mandated therein. That was not done here. Malone told the court that she wanted to discharge her attorney because he failed to file certain requested motions. The trial court never inquired what motions she wanted to file in the case or counsel's reasons for not filing them. The Nelson inquiry conducted here did not address the basis for Malone's dissatisfaction with counsel.
Adherence to Nelson (and Faretta when appropriate), is mandatory. Hence, we are compelled to reverse Malone's conviction and remand for a new trial based on our conclusion that the trial court failed to conduct an appropriate Nelson inquiry.
REVERSED AND REMANDED.
PETERSON and MONACO, JJ., concur.