889 So.2d 114 (2004)
Terris Angelo WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-2775.
District Court of Appeal of Florida, Fourth District.
November 24, 2004.
Rehearing Denied January 6, 2005.
*115 Carey Haughwout, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The issue in this case is whether the trial judge committed reversible error by failing to conduct an inquiry pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), adopted by Hardwick v. State, 521 So.2d 1071 (Fla.1988). We hold that because appellant expressed only a general dissatisfaction with his attorney unrelated to trial strategy, the trial court did not reversibly err in failing to conduct a Nelson hearing.
Appellant Terris Wilson's comments about his trial counsel arose shortly after 9:30 a.m., before jury selection began, while forty-two prospective jurors waited in the hallway. The defense attorney told the judge that Wilson felt that the clothing which the attorney had provided for him did not fit.
[Defense Counsel]: ... I know the shirt he said or the pants, he said didn't fit him. I don't know. I asked, none of the deputies saw him with the clothes on either. The shirt definitely fits him. I told him, I already explained to Mr. Wilson that he needs to put the clothes on, if not, the jury will see him in blues.
Uneasy about keeping the jurors waiting, the judge spoke with Wilson about his sartorial concerns:
[Appellant]: Ms. Brown.
Court: Judge Brown.
[Appellant]: Yes. I ain't even know I was coming to trial today.
Court: You want to be in trial with the shirt, the civilian shirt or with the jail shirt?
[Appellant]: I go to trial like this, don't make no difference.

*116 Court: Mr. Wilson, turn around, face me, okay, answer my question.
[Appellant]: Yes.
Court: Yes, you want what?
[Appellant]: I will go like this.
Court: Say it again.
[Appellant]: I'll go like this, how I am right now.
Court: For the record, you are wearing jail clothes. You did not want a civilian shirt instead of the jail clothes?
[Appellant]: Judge Lucy Brown 
Court: Is that a yes or a no?
[Appellant]: I was not notified I was coming to trial. If I had been notified, I would have had my family bring me clothes.
Court: Do you want to wear the shirt that's been provided, that fits; yes or no?
[Appellant]: Yes, I will wear it.
Court: You want to take him 
[Appellant]: No, I am ready, I am ready right now, just how I am.
[Defense Counsel]: For the record, he was contacted by a close friend of his family, told him about the trial, told him he need[ed] clothes, gave over two weeks to bring them any time to my office.
[Appellant]: Your Honor 
Court: I am not going to argue about this, understand. There was notice. All I need to know is, do you choose to wear the jail clothes?
[Appellant]: Can I ask you one question?
Court: No. You have to answer my question.
[Appellant]: I was not notified I was to be in Court today.
Court: Do you choose to wear the jail clothes?
[Appellant]: Yes, Your honor. This girl who she talked to who I had her talked to right there, can you please ask her, did she notify her I was coming to [court] today?
Up to this point in the transcript, five themes are apparent. First, with the jurors in the hallway, the judge is understandably concerned about starting the trial. Second, Wilson is unhappy about the clothing that had been provided for him to wear at trial. Third, Wilson does not believe he was adequately notified about the commencement of the trial. Fourth, the judge is worried that because of his anger over the situation, Wilson may be making the rash, unwise decision to wear his jail uniform for jury selection. Fifth, Wilson was evading the judge's questions about his decision concerning his attire.
To question Wilson more closely about his clothing options, the judge placed him under oath:
Court: Now ... [y]ou have to answer my question with a yes or no; do you understand that?
[Appellant]: Yes.
Court: Okay. Do you choose to wear the jail clothes you are wearing now; yes or no?
[Appellant]: Can you please set this off for one day please, so I can notify my family so I can dress properly, please?
Court: I really do not want to hold you in contempt of court. I don't want to make it so you cannot be present for your own trial. I need a yes or no.
[Appellant]: If I am held in contempt of [c]ourt, I will have another case too.
[Defense Counsel]: Court will consider 1:30, I will rush deliver to where he needs me to go to wherever he needs.
Court: I will consider waiting until 1:30. I will not consider anything longer than that.

*117 [Defense Counsel]: No.
Court: However, I will not do that until the Defendant understands that when I tell him he has to answer yes or no, he has to do it.
[Appellant]: Yes.
Court: You have trouble understanding the English language?
[Appellant]: I don't have trouble understanding English.
Court: Listen to me. You are going to trial today, that is not an issue. You can go now, you can wear your jail clothes, if that's what you choose. Is that what you choose; yes or no?
[Appellant]: I want the [c]ourt to know that I was not notified that I was coming to [c]ourt today. I saw [defense counsel] one time this whole year.
Court: I cannot  I really 
[Appellant]: She lied to me on numerous occasions. She didn't come see me.
Court:  I will not allow the Defendant to remain.
[Appellant]: I asked  which can hear some statement from the  please don't, not representing me properly, I don't want her to represent me.
Court: I want you to be present during the trial however as [d]eputy 
[Appellant]: She lied to me all the time.
Court:  the deputy is putting 
[Appellant]:  just like she is right now.
Court: You cannot talk at the same time I am talking.
[Appellant]: I don't want her representing me, man she lying, she lying to the [c]ourt right now. She has, also, lied to me on numerous occasions, numerous amounts of time.
Court: Here, my ruling is this: We are going to proceed. If Defendant is unable to keep himself from talking when it's not his turn to [sic] talk, he cannot be in the 
[Appellant]:  tell these people the truth, [defense counsel].
Court: Take him into the jail cell, I will continue telling [c]ounsel what my ruling is.
The trial court's concern was that appellant persisted in talking out of turn. After Wilson was removed from the courtroom, the court granted defense counsel's motion to continue the case until 1:30 p.m. Defense counsel told the judge that she would use the postponement to find Wilson's family: "No matter where they live in Palm Beach County, I should be able [to] do it within two hours and a half."
According to the transcript, court reconvened at 1:40 p.m. later the same day. Apparently, the clothing issue had been resolved to Wilson's satisfaction. He wished the court a "good afternoon." In contrast to the heated exchange from the morning, Wilson complained neither about his attire nor his attorney. Jury selection began. The prosecutor suggested that the court conduct a Nelson inquiry, but the court refused, ruling that appellant had not made a specific request to discharge counsel. Even after the prosecutor's suggestion, Wilson voiced no complaint about his counsel.
From the time jury selection commenced to the end of the trial, the record reveals no further discussion regarding Wilson's unhappiness with defense counsel or his request to discharge her.
The standard of review concerning a trial court's conduct regarding a Nelson inquiry is abuse of discretion. Moore v. State, 778 So.2d 1054, 1056 (Fla. 4th DCA 2001). A trial judge "does not abuse its discretion in refusing to conduct a Nelson inquiry when the defendant fails to make an unequivocal request for the *118 discharge of counsel ... [or] where the defendant merely expresses his general dissatisfaction with counsel...." Id. Thus, it is not error to fail to conduct a Nelson hearing where a defendant expresses only general "dissatisfaction with his counsel's trial preparation, his witness development, and his lack of contact with the defendant." Morrison v. State, 818 So.2d 432, 440 (Fla.2002) (stating that "a trial court does not err in failing to conduct a Nelson inquiry where the defendant merely expresses dissatisfaction with his attorney"); Dunn v. State, 730 So.2d 309, 311-12 (Fla. 4th DCA 1999). A "lack of communication between the defendant and counsel is not a ground for a claim of incompetency." Bowhey v. State, 864 So.2d 510, 511 (Fla. 5th DCA 2004); accord Wallace v. State, 860 So.2d 494, 496, n. 1 (Fla. 4th DCA 2003). These holdings rest, in part, on the practical reality that a "trial judge's inquiry can only be as specific as the defendant's complaint." See Logan v. State, 846 So.2d 472, 477 (Fla.2003).
Here, Wilson's complaints about his attorney arose during a heated exchange concerning his unhappiness over his attire and the fact that trial was about to begin, not anything to do with the performance of his attorney. Taken in context, Wilson's statement that his attorney had lied had nothing to do with her competence or the presentation of a defense at trial. The comment was tied to the trial date and appellant's trial attire, matters peripheral to the question of attorney competence.
The defense attorney secured a short postponement from a judge eager to begin jury selection. She apparently located the defendant's family and secured acceptable clothing during the break. After jury selection began, Wilson never uttered a complaint about his attorney. The record reflects that the defense attorney mounted more than a competent defense at trial. Wilson did not raise specific complaints about defense counsel's trial strategy or "formal allegations of incompetence" that would have triggered the requirement of a Nelson hearing. Cf. Malone v. State, 852 So.2d 412, 416 (Fla. 5th DCA 2003) (holding that defendant's complaint that she wanted to discharge her attorney because he failed to "file certain requested motions" held sufficient to trigger Nelson inquiry).
There is dicta in Moore, 778 So.2d at 1056 (quoting Marti v. State, 756 So.2d 224, 228 (Fla. 3d DCA 2000)), which indicates that "[t]he mere expression of a desire to discharge appointed counsel necessitates an inquiry `as to the reason for the request to discharge.'" This dicta is in tension with the supreme court's holding in Morrison that a Nelson hearing is unwarranted "where a defendant presents general complaints about defense counsel's trial strategy and no formal allegations of incompetence have been made." 818 So.2d at 440. To decide whether further inquiry is mandatory under Nelson, a defendant's expression of a desire to discharge appointed counsel must be considered in the context in which the statement is made.
Setting too low a bar for the mandatory requirement of a Nelson hearing places an undue burden on trial courts. A Nelson issue frequently arises "on the day of trial" when "a jury venire of inconvenienced citizens is impatiently waiting in the courthouse for the jury selection process to begin." Jones v. State, 658 So.2d 122, 126 (Fla. 2d DCA 1995). As the supreme court has developed the law, a Nelson hearing is necessary only where a defendant has specifically expressed "formal allegations" about an attorney's competence that the trial court must explore. To trigger a Nelson hearing, a defendant must raise specific allegations of attorney incompetence sufficient to warrant the inquiry; *119 it is not the job of the trial judge to become an advocate for the defendant, assisting in developing the grounds that demonstrate counsel's deficient performance. The trial judge did not abuse her discretion in this case by failing to hold a Nelson hearing.
AFFIRMED.
STEVENSON and HAZOURI, JJ., concur.