DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EDDIE LARRY HOLLAND,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-1365

[December 16, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Caroline C. Shepherd, Judge; L.T. Case No. 502017CF007040A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Eddie Holland appeals his judgment and sentence for one count of Attempted First Degree Murder with a Firearm (Premeditated). Appellant raises three issues on appeal: (1) the trial court abused its discretion in denying an oral motion for continuance; (2) the trial court abused its discretion in overruling his objections to the State's allegedly improper closing argument; and (3) the trial court erred in failing to conduct a *Nelson*[1] hearing. We affirm as to all issues, writing only to address Appellant's third argument, which we affirm without prejudice, as explained below.

**Background**

Appellant was charged by Amended Information with one count of Attempted First Degree Murder with a Firearm (Premeditated) ("Count 1") and one count of Felon in Possession of Firearm or Ammunition (Actual

---

[1] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

Possession) ("Count 2"). Appellant proceeded to trial on Count 1, wherein a jury found him guilty as charged in the Amended Information.[2]

At the ensuing sentencing hearing, Appellant addressed the court. Appellant stated the following in reference to his trial counsel:

> Your Honor, I want to say this best I can without being disrespectful or none of that. You know. From the start I was at a disadvantage. She waived my speedy trial from the get-go. She didn't call all my witnesses and she didn't go to my job. I was on in-house arrest with a leg monitor on my leg, Your Honor. I was on in-house arrest. She didn't call the Government official, which is my probation officer. I was at a disadvantage. She didn't give me Discovery. I called. I couldn't talk to her at times. I probably talked to her in two years on the phone once or twice. She wasn't prepared for this case at all. She got the witnesses – she got the victim on the stand, she didn't cross-examine them at all. You was here, Your Honor, she didn't cross-examine them people at all. If a person tell a story and nobody counter that, it sound true. You know, I don't know the law much. You know, but I just know that she did me wrong. And all she had to say [was] she wasn't prepared for trial. But she get to go home. I can't go home to my family. So she violated my constitutional rights. She – I was at a disadvantage, Your Honor. I'm innocent. She had to take my word, just get the GPS monitor. Get the house arrest band. She didn't go to my job. She just took these two guys that were convicted felon's [sic] word. It was a phone call that they had or a call that you heard, Your Honor. At the end of that phone call, I said did you talk to the girl? Did you talk to the attorney? She said $10,000. The attorney came to see me three times. My people was in the process of getting me an attorney. She knew that. And the phone call before that, I might have used derogatory language towards her. So I felt like she had that in her heart. And she didn't represent me to the best of her ability. With all due respect, Your Honor, that's it, ma'am.

The trial court responded that its recollection of the trial was "grossly different," noting that defense counsel had done "an admirable job," representing Appellant "with professionalism and the skill and the knowledge of evidence and advocated for [Appellant] as well as any

---

[2] The State nolle prossed Count 2.

attorney I have every [sic] seen." The trial court further stated that defense counsel "did her very best to provide all the witnesses that were available, as well as continuing to look for witnesses," and "did an excellent job crossing the witnesses."

Immediately thereafter, the trial court sentenced Appellant on Count 1 to life in prison as a prison releasee reoffender, imposing a twenty-five-year mandatory minimum sentence. The trial court subsequently reduced its findings to a written sentencing order, which Appellant timely appealed.

## Analysis

As part of his argument that the trial court erred in failing to conduct a *Nelson* hearing, Appellant also argues his counsel rendered ineffective assistance of counsel. This Court reviews a trial court's conduct regarding a *Nelson* inquiry or hearing under an abuse of discretion standard. *Wilson v. State*, 889 So. 2d 114, 117 (Fla. 4th DCA 2004); *Boaz v. State*, 135 So. 3d 506, 507 (Fla. 5th DCA 2014). However, we review claims of ineffective assistance of counsel on direct appeal *de novo*. *See Flaherty v. State*, 221 So. 3d 633, 635 (Fla. 4th DCA 2017).

### A. *Nelson* Hearing

"A trial court must conduct a *Nelson* hearing only when a defendant's actions satisfy a three-prong test: 'the defendant makes a "clear and unequivocal statement" that he wishes to discharge appointed counsel, the discharge request is based on a claim of incompetence, and the alleged ineffectiveness arises from counsel's current representation.'" *Boaz*, 135 So. 3d at 507 (quoting *Laramee v. State*, 90 So. 3d 341, 344 (Fla. 5th DCA 2012)). Because "[t]he rule in *Nelson* was designed as a prophylactic measure to prevent a trial from commencing—not to abort a trial already in progress"—a request to discharge counsel is untimely after trial has already begun. *Haugabook v. State*, 689 So. 2d 1245, 1246 (Fla. 4th DCA 1997). Therefore, in such circumstances, neither a *Nelson* inquiry nor a full hearing is required. *See id.*

This is especially true in sentencing hearings in which a defendant complains about his or her attorney's representation during trial. *See Blanding v. State*, 939 So. 2d 173, 175 (Fla. 1st DCA 2006) (stating a *Nelson* hearing was not required at a sentencing hearing where a defendant's complaints about his attorney occurred *before* sentencing and related to *past* ineffectiveness). "It is the purpose of the *Nelson* inquiry to determine if the appointed counsel *is* performing adequately and if not, to replace such counsel. The *Nelson* inquiry has no role in *past*

ineffectiveness of counsel [claims]." *Denson v. State*, 689 So. 2d 1274, 1275 (Fla. 5th DCA 1997); *see also Haugabook,* 689 So. 2d at 1246 (distinguishing *Lockwood v. State*, 608 So. 2d 133, 134 (Fla. 4th DCA 1992) on the basis that a request to discharge counsel after trial, but *before* sentencing, would have allowed inquiry into any claim that defense counsel had inadequately prepared *for the pending sentencing hearing*).

In the instant case, even assuming that Appellant's statement was a clear and unequivocal statement that he wished to discharge defense counsel, Appellant's statement came at the conclusion of the sentencing hearing referencing conduct from the trial portion of his case. Because *Nelson* was designed as a prophylactic measure and because the alleged ineffectiveness did not arise from defense counsel's *current* representation, Appellant's statement was untimely and warranted neither a *Nelson* inquiry nor a full hearing.

B. Ineffective Assistance of Counsel

"Ineffective assistance of counsel claims should rarely be raised on direct appeal because they are generally fact-specific . . . ." *Kruse v. State*, 222 So. 3d 13, 16 (Fla. 4th DCA 2017) (quoting *Michel v. State*, 989 So. 2d 679, 681 (Fla. 4th DCA 2008)). "[A]s a result, appellate courts do not usually address such claims 'until a defendant seeks postconviction relief because such courts are limited to reviewing the record directly before them.'" *Id.* (quoting *Monroe v. State*, 191 So. 3d 395, 403 (Fla. 2016)). An ineffective assistance of counsel claim on direct appeal can be addressed only "where the incompetence and ineffectiveness of counsel is apparent on the face of the record and prejudice to the defendant is obvious." *Jones v. State*, 137 So. 3d 446, 449 (Fla. 4th DCA 2014) (quoting *Aversano v. State*, 966 So. 2d 493, 495 (Fla. 4th DCA 2007)).

To prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient and that "the deficient performance . . . prejudiced the defendant, ultimately depriving the defendant of a fair trial with a reliable result." *Bradley v. State*, 33 So. 3d 664, 671–72 (Fla. 2010). With respect to the deficiency prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sparre v. State*, 289 So. 3d 839, 846 (Fla. 2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As to prejudice, "a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Little v. State*, 302 So. 3d 396, 401 (Fla. 4th DCA 2020) (quoting *Strickland,* 466 U.S. at 694).

Here, Appellant stated that his counsel was ineffective for failing to provide him with discovery and, based upon claims that defense counsel did not contact his probation officer, appears to allege that his counsel was ineffective for failing to investigate a possible alibi. Appellant also states that his counsel failed to call his requested witnesses, was not prepared for the case, and did not cross-examine witnesses.

The face of the record does not demonstrate that Appellant's counsel was deficient and therefore necessarily does not demonstrate that he was prejudiced as a result of any alleged deficiency. With respect to counsel's alleged failure to provide discovery, Appellant did not elaborate on the discovery that counsel failed to provide, nor was there any reference to such in the record. Similarly, with respect to counsel's alleged failure to investigate a potential alibi, Appellant merely stated "I was on in-house arrest with a leg monitor on my leg, Your Honor. I was on in-house arrest. She didn't call the Government official, which is my probation officer." No further detail was provided. Nor is there any support in the record for this claim, or reference to any potential alibi.

The record also seems to contradict Appellant's claim that defense counsel was ineffective for failing to adequately prepare for trial, call several witnesses, and cross-examine the State's witnesses. Defense counsel stated her office had both attempted to call and to physically contact witnesses, and the trial court found defense counsel "did her very best to provide all the witnesses that were available." The trial court also complimented defense counsel for doing "an admirable job" representing Appellant. Finally, the record is replete with defense counsel's cross-examination of multiple prosecution witnesses. Thus, Appellant has not shown, on the face of the record, that his counsel was ineffective.

## Conclusion

Because we hold that Appellant's request to discharge his counsel—to the extent his statement can be classified as such—was untimely, we hold the trial court did not err in failing to conduct a *Nelson* hearing. To the extent that Appellant raises an ineffective assistance claim on direct appeal, although we hold Appellant does not meet the strict requirements for demonstrating ineffectiveness on the face of the record, we affirm this claim without prejudice to Appellant filing an appropriate Florida Rule of Criminal Procedure 3.850 motion below. We otherwise affirm on all issues raised.

*Affirmed.*

5

MAY and KUNTZ, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***