# Supreme Court of Florida

———————

No. SC14-2296

———————

**RALPH MONROE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[April 28, 2016]

PER CURIAM.

This case is before the Court to review the decision of the First District Court of Appeal in Monroe v. State, 148 So. 3d 850 (Fla. 1st DCA 2014). In its decision the district court ruled upon the following question, which the court certified to be of great public importance:

> DO F.B. V. STATE, 852 So. 2d 226 (Fla. 2003), AND YOUNG V. STATE, 141 So. 3d 161 (Fla. 2013), REQUIRE PRESERVATION OF AN EVIDENTIARY DEFICIENCY WHERE THE STATE PROVED ONLY A LESSER INCLUDED OFFENSE AND THE SENTENCE REQUIRED FOR THE GREATER OFFENSE WOULD BE UNCONSTITUTIONAL AS APPLIED TO THE LESSER OFFENSE?

Id. at 861. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

## BACKGROUND

### Facts

On May 25, 2011, Sandra Grant, a teacher at the Florida Agricultural and Mechanical University Developmental Research School (FAMU DRS) was speaking to another teacher in a school hallway when she noticed odd behavior by T.J., an eight-year-old male student. T.J. had approached a restroom, but hesitated when he saw Petitioner Ralph Monroe, then a high school senior at FAMU DRS, knock on the restroom door from the hallway. T.J. told Grant and the other teacher that he could not enter the restroom then because Monroe would "bother" him. When Grant inquired further, T.J. said, "[h]e will ask me, How do I use the bathroom? And he will tell me, Let's play a game with it."

The incident was referred to Special Agent Terry Thomas of the Florida Department of Law Enforcement, who conducted a forensic interview with T.J. During that interview, T.J. stated that his birthday was on February 4. T.J. told Thomas that while he was using the restroom, a "big kid" approached him in the stall, touched his penis, inserted a finger into his anus, and asked if he wanted to play a game. T.J. told the big kid that he did not want to play, and when the question was repeated, T.J. replied "no" again and walked away. He also told Thomas that this person had approached him on more than one occasion, while he

- 2 -

was eight years old. (T.J. had turned eight years old on February 4, 2011). T.J. identified Monroe from a photo array during the interview.

Following that interview, Thomas traveled to Stillman College in Alabama, where he interviewed Monroe regarding T.J.'s allegations. Monroe initially denied the allegations, but eventually confessed that he had asked T.J. if he wanted to play a game and touched T.J.'s penis in the restroom of the school. The State Attorney's Office filed a second amended information against Monroe that charged him with the following four counts: (I) sexual battery upon T.J., a person less than twelve years of age, by digitally penetrating his anus, and Monroe was eighteen years of age or older; (II) lewd and lascivious molestation of T.J. by touching the breasts, genitals, genital area, or clothing covering those areas of T.J., and Monroe was eighteen years of age or older; (III) sexual battery upon T.J., and Monroe was less than eighteen years of age; and (IV) lewd and lascivious molestation of T.J., and Monroe was less than eighteen years of age.

During trial, the State presented testimony from Grant, Thomas, an additional investigator, and T.J.[1] T.J., who was unable to specifically identify

---

1. The State also presented testimony from another alleged victim, J.T., and his stepmother. After Monroe's arrest became public, J.T.'s stepmother learned that her stepson had been similarly approached in the restroom of FAMU DRS by Monroe. Thomas also conducted a forensic interview with J.T., a recording of which was shown to the jury. Before J.T. or his stepmother testified, the trial court

Monroe during trial, testified that a person approached him in the school bathroom after he had pulled down his pants, asked him about playing a game, touched his penis, and then inserted a finger into his anus. During trial, T.J. testified that this incident occurred only once, which was contrary to the information he gave Thomas during the forensic interview. The recording of that interview, as well as the recording of Monroe's inculpatory statement to Thomas, were entered into evidence.

The central issue during trial focused on whether Monroe had approached T.J. before or after Monroe's eighteenth birthday on February 27, 2011. During the direct examination of T.J., the following exchange resulted:

Q. Did this happen more than once?

A. Just once.

Q. Okay. The—was this after Christmastime?

A. Maybe. I don't know.

Q. Okay. Do you remember—do you know Ms. Grant?

A. Yes.

. . . .

Q. Do you remember going and telling her about going into the bathroom?

---

read a limiting instruction reminding the jury that the State had charged Monroe with sexual battery and lewd and lascivious molestation of only T.J.

A. Yes.

Q. Was it—did it happen after spring break?

A. Maybe.

Q. Okay. Do you remember going to spring break on the beach?

A. Yes.

Q. Do you think it was before or after spring break?

A. Maybe after.

Q. Okay. And was it after the Easter bunny came and saw you?

A. No.

Q. Okay. The—was it after Christmas?

A. No, I don't—

Q. Do you remember exactly when it happened?

A. Yes, sir.

Q. Okay. Did you ever see him in the bathroom another time?

A. No.

After the State rested, the trial court asked defense counsel if they intended to move for judgment of acquittal. Defense counsel declined, and the court stated, "I find there's a prima facie case, that judgment of acquittal would be fruitless at this time." Defense counsel then rested without presenting any evidence.

During closing statements, both parties discussed the date that Monroe had

approached T.J. The State made the following argument:

> Ladies and gentlemen, I would suggest to you that the issue is not whether it happened. The real issue for this jury to decide is when did it happen. Obviously, eight-year-olds have a little bit different time. . . . So trying to ask an eight-year-old what time of year it was, they don't work on a date calendar. . . . [Y]ou heard me ask him some questions about Spring Break and Easter bunnies and things along those lines. That's probably the most challenging thing for this jury to determine.
>
> To go over the dates once again, [T.J.] turned eight on February the 4th, 2011, and he said this happened when he was eight. The defendant was 17 up until February the 27th of 2011. . . . There's a different penalty if you were 18 and you do this to an eight-year-old versus if you're 17 and younger. . . .
>
> So you have 23 days that are possible that he could have done this based on that window when he was still 17. The State would suggest to you that the most compelling evidence is that on May 25th of 2011, this little boy, with fear in his voice and trembling, runs up to a teacher and says I can't go to the bathroom because that boy will come in there and mess with me. I would suggest to you that was fresh fear. I would suggest to you that shows that it wasn't three months before, but that it was a couple of days or weeks before.

Defense counsel also addressed the date of the incident:

> With respect to . . . Element No. 3, that Mr. Monroe was 18 years or older, you can't speculate. You can't speculate that it's possible that he did this during the 23 days. If it's possible, then there's reasonable doubt. If it's possible that this occurred when he was 17 years old, the State has not proved its case. And I would submit that you must find the defendant to have been 17 years old—age at the time.

The jury instructions also explained that Counts III and IV were the lesser-included

offenses for both sexual battery and lewd and lascivious molestation.

The jury convicted Monroe of Count I, sexual battery against a child by a person eighteen years of age or older, and Count II, lewd and lascivious molestation on a child by a person eighteen years of age or older. The court sentenced him to life imprisonment for Count I, forty years' imprisonment for Count II, and designated him a sexual predator.

**Decision of the First District**

Monroe appealed his convictions and sentences to the First District, which ultimately affirmed the sentences. Monroe, 148 So. 3d at 852.[2] Monroe conceded that the sufficiency issue was not preserved during trial because defense counsel did not move for judgment of acquittal. Id. at 857-58. The First District therefore considered whether a fundamental error, as defined by F.B. and Young, had occurred. Id. at 858. Monroe asserted that a fundamental error resulted because the State failed to prove his age at the time of the offenses, and the penalties for the crimes varied drastically based on the age of the defendant. Id. A conviction for sexual battery against a child under the age of twelve carries a mandatory sentence

---

2. Monroe also appealed the denial of his motion to suppress his inculpatory statements. Monroe, 148 So. 3d at 852. He argued that he was subject to custodial interrogation at the time of the interview, and therefore he should have been informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Monroe, 148 So. 3d at 854-55. The First District extensively reviewed the circumstances of that interview and concluded that Monroe was not in custody at the time, rendering the Miranda warnings unnecessary. Id. at 855-57. However, Monroe does not now assert any error regarding that matter.

of life imprisonment without the possibility of parole for a defendant that is eighteen years old, but if the defendant is under the age of eighteen, the judge has greater discretion in sentencing. Id. (citing §§ 794.011(2)(a)(b), 775.082(1)-(3), Fla. Stat. (2011)).

In F.B., this Court held that the State's failure to prove an element of a crime beyond a reasonable doubt does not constitute fundamental error. 852 So. 2d at 227. In that case, a juvenile offender was charged with and adjudicated delinquent for petit theft of items valued at $100 or more, but less than $300. Id. The State did not present evidence about the value of the items, but F.B. did not object or move for judgment of acquittal during trial; the issue of sufficiency was first raised on appeal. Id. The Fourth District Court of Appeal held that defendants must preserve a claim that the State failed to provide sufficient evidence of an element of a crime for appellate review, but certified conflict with T.E.J. v. State, 749 So. 2d 557 (Fla. 2d DCA 2000). F.B., 852 So. 2d at 227-28. In T.E.J., the Second District Court of Appeal held that the State's failure to prove an essential element of an offense constituted fundamental error. Id. at 228 (citing T.E.J., 749 So. 2d at 558).

We approved the Fourth District's analysis and rejected that of the Second District. Id. at 231. We explained that parties must ordinarily raise a specific, contemporaneous objection to a perceived error during trial to preserve the error

for appellate review.  Id. at 229 (citing J.B. v. State, 705 So. 2d 1376, 1378 (Fla. 1998); Steinhorst v. State, 412 So. 2d 332, 338 (Fla. 1982)).  This rule serves the interests of judicial economy and fairness by requiring errors to be addressed immediately and preventing attorneys from subsequently using an error to gain a tactical advantage, or "sandbag" opposing counsel.  Id. (citing J.B., 705 So. 2d at 1378).  Therefore, unless the evidence was insufficient to show that any crime had been committed, claims of insufficient evidence must be properly preserved.  Id. at 230.

The First District noted that following F.B., several district courts continued to conclude that fundamental error results when the State failed to prove that the defendant committed the specific crime of which he or she had been convicted. Monroe, 148 So. 3d at 858-59.  However, the district court explained that this Court clarified the F.B. exception in Young:

> Young was convicted of burglary of a dwelling.  141 So. 3d at 163.
> On appeal and before the Florida Supreme Court, Young raised the
> unpreserved argument that the structure he entered was not a dwelling
> because it was undergoing substantial renovations, and was arguably
> not suitable for lodging, at the time of the offense.  Id. at 163-65.  The
> court found this argument waived because the evidence suggested, "at
> the least, . . . that [the defendant] committed a burglary of a structure."
> Id. at 165.  The court explained, "As the evidence indicates that a
> crime was in fact committed by [the defendant], [his] conviction
> cannot be said to be fundamental error."  Id. (emphasis added).
>     Young supports the more stringent reading of F.B. to require a
> showing that the evidence could not support the conviction of any
> crime whatsoever before an evidentiary deficiency may be held to
> constitute fundamental error.  Only then will such a "complete failure

of the evidence" rise to the level of fundamental error.  F.B., 852 So. 2d at 230.

Monroe, 148 So. 3d at 859 (footnote omitted).  Accordingly, the district court concluded that there was sufficient evidence that Monroe committed a crime and reversal was not permitted under Young or F.B.  Id.

However, the district court expressed discomfort with its holding in light of the sentencing disparity under these circumstances:

> Monroe's failure to preserve the issue resulted in a monumental disparity between the sentence the court was required to impose under the verdict for capital sexual battery and the sentence the court could have imposed under a verdict supported by competent, substantial evidence.  The difference between preservation and silence in this case meant the difference between a mandatory life sentence without parole and the availability of a term of years.  Under Graham v. Florida, 560 U.S. 48, 74 (2010), a mandatory sentence of life without parole for a nonhomicide offense is unconstitutional when imposed against a juvenile offender.  Therefore, the State's failure to prove that Monroe was an adult at the time of his offenses has constitutional significance.

Id. at 861.  Therefore, the First District certified the following question to this Court for review:

> DO F.B. V. STATE, 852 So. 2d 226 (Fla. 2003), AND YOUNG V. STATE, 141 So. 3d 161 (Fla. 2013), REQUIRE PRESERVATION OF AN EVIDENTIARY DEFICIENCY WHERE THE STATE PROVED ONLY A LESSER INCLUDED OFFENSE AND THE SENTENCE REQUIRED FOR THE GREATER OFFENSE WOULD BE UNCONSTITUTIONAL AS APPLIED TO THE LESSER OFFENSE?

Id.  This review follows.

# ANALYSIS

## Certified Question of Great Public Importance[3]

A fundamental error "must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." F.B., 852 So. 2d at 229 (citing Brown v. State, 124 So. 2d 481, 484 (Fla. 1960)). Accordingly, this Court has emphasized that reviewing courts should proceed with caution when considering whether a fundamental error has occurred. See Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970) ("The Appellate Court should exercise its discretion under the doctrine of fundamental error very guardedly."); see also Daniels v. State, 121 So. 3d 409, 417 (Fla. 2013) (addressing fundamental error in the context of jury instructions); Farina v. State, 937 So. 2d 612, 629 (Fla. 2006) (concerning prosecutorial statements); Hopkins v. State, 632 So. 2d 1372, 1374 (Fla. 1994) (considering whether factual findings by the trial court constituted fundamental error).

We have even more narrowly applied the fundamental error doctrine to alleged errors of insufficient evidence. There are only two instances in which an unpreserved challenge to the sufficiency of the evidence can be reviewed: (1) the

---

3. The question certified by the First District presents a pure question of law that we review de novo. See, e.g., Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1255 (Fla. 2014).

mandatory review by this Court of the evidence by which a capital defendant was convicted and sentenced to death; and (2) when there is insufficient evidence that a defendant committed any crime. See Fla. R. App. P. 9.140(i); Young, 141 So. 3d at 165; F.B., 852 So. 2d at 230. Challenges to the sufficiency of the evidence inherently question the conclusions of the fact-finder, a process that we, as an appellate court, are reluctant to undertake. See Young, 141 So. 3d at 165. Appellate courts should more closely concern themselves with the legal sufficiency of the evidence, rather than the weight assigned to or the credibility of the evidence before the trial court. Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981). Therefore, when an appellate court conducts a sufficiency review, it deferentially reviews all of the evidence in the record in the light most favorable to the government to determine whether a rational trier of fact could have reached the verdict. See, e.g., F.B., 852 So. 2d at 230 (citing Tibbs, 397 So. 2d at 1123); Bradley v. State, 787 So. 2d 732, 738 (Fla. 2001).

Monroe now asks this Court to expand the narrow confines of this doctrine to permit review of an unpreserved sufficiency of the evidence error when a manifest miscarriage of justice occurs. He urges the Court to adopt the standard employed by federal courts, suggesting that the federal appellate circuits uniformly reverse convictions unsupported by sufficient evidence where a manifest miscarriage of justice might otherwise result.

However, we should not expand our jurisprudence under such a nebulous standard. First, it offers little meaningful guidance for the appellate courts of this State. As acknowledged by counsel for Monroe during oral argument, one knows a manifest miscarriage of justice only when one sees it. See Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). While pithy, such a standard cannot be uniformly or clearly applied across this State. Further, the federal standard does not appear to be nearly as uniform or straightforward as Monroe suggests. Compare, e.g., United States v. Fries, 725 F.3d 1286, 1291 n.5 (11th Cir. 2013) ("The parties both suggest that we should review the sufficiency of the evidence in this case for plain error, but where a defendant fails to preserve an argument as to the sufficiency of the evidence in the trial court, the predominant rule in this circuit—established by a long and unchallenged line of cases—is better stated as requiring that we uphold the conviction unless to do so would work a manifest miscarriage of justice.") with United States v. Spinner, 152 F.3d 950, 956 (D.C. Cir. 1998) (applying the plain error standard established in Federal Rule of Criminal Procedure 52(b) to review a challenge to the sufficiency of the evidence); United States v. Meadows, 91 F.3d 851, 854-55 (7th Cir. 1996) ("Our court has stated that when the defendants have failed to challenge the sufficiency of the evidence before the district court, we review only for plain error, and defendants must demonstrate a manifest miscarriage of justice."). Without a clearly

articulable and readily applicable standard, we will not expand the narrow

exceptions to the fundamental error doctrine with respect to sufficiency of the

evidence claims. Accordingly, we answer the question certified by the First

District in the affirmative.

### Ineffective Assistance of Counsel

However, there remains an additional issue for this Court to resolve.[4] We

hold that the failure of Monroe's trial counsel to preserve the sufficiency of the

evidence issue for appellate review constitutes ineffective assistance of counsel

that is apparent from the face of this record.[5]

An attorney renders ineffective assistance of counsel through conduct that

exceeds the bounds of reasonable professional assistance, without which, there is a

reasonable probability that the client would have enjoyed a different result.

---

4. Once we properly possess jurisdiction, we may consider any other error before us. See Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 912 (Fla. 1995).

5. Contrary to the suggestion below, the finding that counsel was ineffective does not undermine the holding in F.B. that a sufficiency claim must ordinarily be preserved. See Monroe, 148 So. 3d at 860 n.3. Although the factual issues underpinning both claims may overlap, one challenges the sufficiency of the evidence presented to the jury, and the other reviews the conduct of trial counsel, who is charged with providing effective assistance to his or her client. Cf. Corzo v. State, 806 So. 2d 642, 645 n.2 (Fla. 2d DCA 2002) ("There is probably a high correlation between errors that may be corrected as fundamental error on direct appeal in the absence of preservation by trial counsel . . . and errors that may be corrected as ineffective assistance of counsel on direct appeal.").

Strickland v. Washington, 466 U.S. 668, 694 (1984). Appellate courts do not ordinarily address ineffective assistance of counsel concerns until a defendant seeks postconviction relief because such courts are limited to reviewing the record directly before them. E.g., Robards v. State, 112 So. 3d 1256, 1266-67 (Fla. 2013); Stewart v. State, 420 So. 2d 862, 864 (Fla. 1982). An appellate court initially reviewing a conviction will only grant relief for ineffective assistance of counsel where the ineffectiveness of counsel is apparent from the face of the record before the appellate court and a waste of judicial resources would result from remanding the matter to the lower court for further litigation. Robards, 112 So. 3d at 1267 (citing Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987)).

The failure to properly preserve an otherwise clear error may constitute ineffective assistance of counsel cognizable on direct appeal. See Bracey v. State, 109 So. 3d 311, 315 (Fla. 2d DCA 2013) (failure to preserve a clear error regarding reliance on incorrect scoring factors during sentencing); see also McComb v. State, 174 So. 3d 1111, 1112-13 (Fla. 2d DCA 2015) (citing Michel v. State, 989 So. 2d 679, 681 (Fla. 4th DCA 2008)) (failure to request or object to exclusion of pertinent instruction); Larry v. State, 61 So. 3d 1205, 1207 (Fla. 5th DCA 2011) (failure to raise obvious defense that would have otherwise resulted in reduced charge). Indeed, several district courts of this State have suggested that the failure to move for judgment of acquittal when there are serious concerns pertaining to the

sufficiency of the evidence presented by the prosecution may constitute ineffective assistance reviewable on direct appeal. <u>Beazley v. State</u>, 148 So. 3d 552, 554 (Fla. 1st DCA 2014) (citing <u>Corzo</u>, 806 So. 2d at 645).

In this case, the failure of Monroe's trial counsel to move for judgment of acquittal of the greater offenses during or after trial was patently unreasonable. Despite the best efforts of the State during trial, the prosecutor was unable to elicit testimony from T.J. regarding the exact date that Monroe assaulted him. At the close of the State's case, the trial court specifically asked trial counsel whether they would move for judgment of acquittal, and trial counsel declined.[6] In spite of this, defense counsel and the prosecution vigorously disputed Monroe's age during closing statements. Finally, trial counsel failed to move for judgment of acquittal following Monroe's conviction pursuant to Florida Rule of Criminal Procedure 3.380(c). We can think of no plausible justification for these decisions of trial counsel, and during oral argument, neither could Monroe's appellate counsel nor the State.

---

6. Although the trial court did find that the State had made a "prima facie case," and noted that a judgment of acquittal would be "fruitless," this appeared to be a generic statement by the trial court. There was no specific finding regarding the date of the offense, and thus no finding regarding whether the State had presented competent, substantial evidence of the greater or lesser included offenses.

Additionally, the prejudice to Monroe is most obvious. First, the failure to seek acquittal on the greater offenses caused Monroe to be sentenced to mandatory life imprisonment without the possibility of parole following his conviction, a sentence that would be unconstitutional if Monroe was not eighteen when this event occurred—a factual matter that the State was unable to prove. See Graham, 560 U.S. at 74.[7] Moreover, if this error had been properly preserved and the trial court had denied the motion, the error would have been reviewed by the First District under a de novo standard, rather than for fundamental error. See, e.g., Heyne v. State, 88 So. 3d 113, 120 (Fla. 2012) (explaining that denials of motions for judgment of acquittal are reviewed de novo). In light of the obvious hesitation of the First District in affirming Monroe's sentence below, there is a reasonable probability of a different result if the First District had been able to review Monroe's convictions under a de novo standard.

Finally, it would be a waste of judicial resources to wait until Monroe seeks postconviction relief for ineffective assistance of counsel when the unreasonableness of the actions of trial counsel and the prejudice to Monroe are

---

7. The decision in Graham was issued in 2010, a year before the offensive conduct occurred and two years prior to this trial. Cf. Johnson v. State, 796 So. 2d 1227, 1228-29 (Fla. 2001) ("A reasonably effective criminal defense attorney must keep himself or herself informed of significant developments in the criminal law . . . ." (citing Villavicencio v. State, 719 So. 2d 322, 323 (Fla. 3d DCA 1998))).

indisputable from the face of the record before us. Therefore, we conclude that this case is one of the rare examples in which the ineffectiveness of trial counsel is cognizable on direct appeal.

**CONCLUSION**

We answer the question certified by the First District in the affirmative. However, we find that Monroe's trial counsel rendered ineffective assistance of counsel and remand this matter for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and LEWIS, CANADY, and PERRY, JJ., concur.
PARIENTE, J., concurs in result with an opinion.
POLSTON, J., concurs in result.
QUINCE, J., concurs in result only.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

I concur in the majority opinion that ineffective assistance of counsel is apparent from the face of the record. Majority op. at 14. However, I concur in result because in this case the State's failure to prove that Monroe was eighteen at the time he committed the crimes of sexual battery and lewd and lascivious molestation constituted fundamental error.

Monroe was charged with sexual battery against a person less than twelve years of age by a person eighteen years of age or older, which requires the State to prove that Monroe was over eighteen years of age when he committed the sexual battery. § 794.011(2)(a), Fla. Stat. (2011). He was also charged with lewd and lascivious molestation on a child less than twelve years old by a person eighteen years and older. § 800.04(5)(b), Fla. Stat. (2011). Clearly then, if the State could not prove that Monroe was eighteen years old at the time of the offenses, there would be insufficient evidence to convict him of either crime because Monroe's age is an essential element of both crimes.

Further, the defendant's age determines the available penalty associated with these crimes. The sexual battery count carries a mandatory sentence of life in prison without the possibility of parole, while the lewd and lascivious molestation charge carries a minimum sentence of twenty-five years imprisonment. See § 775.082(1)-(3), Fla. Stat. (2011). Significant to this case is that if Monroe was not eighteen and over, his mandatory sentence of life without parole for a nonhomicide offense would be unconstitutional under the Eighth Amendment. Graham v. Florida, 560 U.S. 48, 74 (2010). Therefore, due to the State's failure to prove Monroe's age, the sentence is not only unlawful on its face, but it is unconstitutional under the Eighth Amendment. And under our application of Graham in Henry v. State, 175 So. 3d 675 (Fla. 2015), and Gridine v. State, 175

So. 3d 672 (Fla. 2015), the 40-year sentence imposed upon Monroe for the lewd and lascivious molestation conviction may raise constitutional concerns as well.

The fundamental error rule, which serves as an exception to the requirement of a preserved error, is a stringent one indeed, and I have generally endorsed a narrow application of the rule. I concurred in the Court's unanimous opinion in F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003), that "rarely will an error be deemed fundamental." This is that rare case.

Unlike other cases, in this situation, age is not merely a technical element that is easily ascertainable, which the State could supply if brought to its attention. Instead, here, Monroe's age was the "central issue" of the case that the State attempted, but ultimately failed, to prove with sufficient evidence. See majority op. at 4 ("The central issue during trial focused on whether Monroe had approached T.J. before or after Monroe's eighteenth birthday on February 27, 2011."). As the majority explains, "[d]espite the best efforts of the State during trial, the prosecutor was unable to elicit testimony from T.J. regarding the exact date that Monroe assaulted him." Id. at 16.

We have applied fundamental error, albeit sparingly, to cases involving unpreserved errors in closing argument and unpreserved errors in jury instructions that incorrectly set forth the law on an essential element of the offense. See, e.g., State v. Montgomery, 39 So. 3d 252 (Fla. 2010). Generally, we have held that the

defense must preserve a claim of insufficient evidence unless two exceptions

apply: when it is a death penalty case; and when there is insufficient evidence that

the defendant committed <u>any</u> crime.  <u>F.B.</u>, 852 So. 2d at 230-31.  As to the second

exception, the Court in <u>F.B.</u> explained:

> The second exception to the requirement that claims of insufficiency of the evidence must be preserved occurs when the evidence is insufficient to show that a crime was committed at all . . . .
>
> Thus, an argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be preserved.  Such complete failure of the evidence meets the requirements of fundamental error—i.e., an error that reaches to the foundation of the case and is equal to a denial of due process.

<u>Id.</u>

In this case, I recognize that the State has proven the lesser offenses of

sexual battery and lewd and lascivious molestation against a person less than

twelve years of age by a person younger than eighteen years, so this case would

not fall into either of these two exceptions.  However, very few crimes hinge on

whether the defendant is an adult, and I would include as an extremely rare but

exceedingly important third exception to the rule that the defense must preserve a

claim of insufficient evidence: when there is insufficient evidence to prove the

defendant was an adult and the adult status of the defendant is an essential element

of the crime.  What makes this situation particularly suitable for application of the

fundamental error standard is that the factual predicate of whether Monroe is

- 21 -

constitutionally eligible to receive the sentences he received for these crimes—proof that he was eighteen or older—is absent.

Alternatively, in the absence of this rare third exception, I would urge that this Court consider adopting the federal standard, which permits a reviewing court to reverse an unpreserved sufficiency of the evidence error to avoid a manifest miscarriage of justice. See United States v. Fries, 725 F.3d 1286, 1291 (11th Cir. 2013). This standard is not an amorphous open-ended standard. As the Eleventh Circuit explained:

> [W]here a defendant does not move for acquittal or otherwise preserve an argument regarding the sufficiency of the evidence in the court below, the defendant "must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). This standard requires us to find either that the record is devoid of evidence of an essential element of the crime or "that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." [United States v.] Milkintas, 470 F.3d [1339,] 1343 [(11th Cir. 2006)] (internal quotation marks omitted); see United States v. Wright, 63 F.3d 1067, 1072 (11th Cir. 1995).

Id. Under that standard, this case cries out for a reversal.

Accordingly, I disagree with the majority with respect to the applicability of fundamental error to this sufficiency of the evidence claim. However, I concur to the extent that the majority concludes that counsel was ineffective and that Monroe is entitled to the same relief he would receive if the error was considered fundamental. Therefore, I concur in result.

Either way, this case should be remanded for resentencing with directions to vacate the sexual battery and lewd and lascivious molestation convictions and enter judgments of conviction pursuant to sections 794.011(2)(b) and 800.04(5)(c)1, Florida Statutes (2011). As a juvenile, in my view, Monroe would then be entitled to be resentenced pursuant to the new juvenile sentencing legislation enacted in chapter 2014-220, Laws of Florida. See Henry, 175 So. 3d at 680. For all these reasons I concur with the result reached by the majority.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D12-3966

(Leon County)

Michael Robert Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Angela Renee Hensel, Assistant Attorney General, Tallahassee, Florida,

for Respondent