# Third District Court of Appeal

## State of Florida

Opinion filed April 26, 2017.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D15-1868
Lower Tribunal No. 10-849-D

————————

**Eduardo Castillo,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rodney Smith, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.

Before SUAREZ, C.J., and LAGOA and SCALES, JJ.

LAGOA, J.

Eduardo Castillo ("Castillo") appeals from his conviction and sentence for second degree murder with a deadly weapon. On appeal, Castillo raises two arguments. First, Castillo argues that the trial court erred in overruling defense counsel's objection to comments made by the State in closing argument. Second, Castillo argues that the trial court improperly reclassified his second degree murder conviction from a felony of the first degree to a life felony pursuant to section 775.087(1)(a), Florida Statutes (2015).

With regard to the first argument, we find that the error was harmless, and affirm Castillo's conviction for second degree murder without further discussion. With regard to the second argument, we agree that the State failed to introduce any substantive evidence that Castillo had actual possession of a deadly weapon. We therefore conclude that the reclassification of Castillo's conviction to a life felony constitutes fundamental error and remand to the trial court for resentencing without reclassification under section 775.087(1)(a).

I.      FACTUAL AND PROCEDURAL HISTORY

The State charged Castillo and his co-defendants by information with the second degree murder of Luis Rodriguez ("Rodriguez") in violation of section 782.04(2), Florida Statutes (2015). The information alleged that Rodriguez was killed by "BEATING AND/OR STRIKING HIM REPEATEDLY" and that "during the course of committing said offense, [Castillo] carried, used, or

threatened to use a deadly weapon, to wit: A BAT AND/OR A STICK AND/OR A ROCK."

At trial, the State presented the testimony of several witnesses who either witnessed or were involved in the attack. Joel Forcelledo ("Forcelledo") testified that on the night of January 7, 2010, he was working as a security guard at a nursing home when he heard screaming in a nearby parking lot. Forcelledo saw several individuals chasing one male who was running and fell down. When the victim fell, he was beaten with a bat but Forcelledo could not identify any of the attackers. Forcelledo called 911 and then rushed to aid the victim.

T.L.[1] testified that on the night in question she witnessed Rodriguez running from a group of at least ten boys that were members of the Bout That Life ("BTL") gang.[2] At trial, T.L. identified "Teddy," "Baby," and "Young Money," but she did not identify Castillo. T.L. saw "Teddy" slam Rodriguez to the floor and also saw "Baby" throw a rock at the victim. She further testified that the entire group of boys participated in hitting and kicking Rodriguez. When T.L.'s father screamed that the police were coming, the group dispersed, and T.L. went to the aid of Rodriguez.

---

[1] Because T.L. was a minor at the time of the attack, we refer to her in this opinion only by her initials.

[2] T.L. testified that she was familiar with the gangs operating in her neighborhood as her brother was a member of the rival gang, Riverside. T.L. further testified that neither she nor Rodriguez were members of the Riverside gang.

The State presented the testimony of two other witnesses who identified Castillo as participating in the attack on Rodriguez. Specifically, Daniel Salas ("Salas")[3] testified that on the night of January 7, 2010, he, Castillo, and others beat Rodriguez, and that during the beating, Castillo "grabbed [Rodriguez] by the shirt and started punching him in the face." Salas did not testify that Castillo used a stick or other weapon.

Rodriguez's friend, Mauricio Ordonez ("Ordonez"),[4] also testified at trial. Ordonez testified that on the night of January 7, he and Rodriguez were at Riverside Elementary School when they heard the name of the gang, BTL, being screamed behind them.[5] A group of people, including Castillo, began to chase him and Rodriguez, so they ran. At trial, Ordonez identified "Baby," "Castillo,"[6] "Teddy," "Alex," and "Young Money" as part of the group that chased him on the night of January 7. On direct examination, Ordonez testified that he did not see any part of the beating because he became separated from Rodriguez while they were running and he hid in a building. The State then elicited testimony from

---

[3] The State did not charge Salas in the information referenced in this case.

[4] Castillo's brief refers to this witness as Mauricio Perez. As the trial transcript and the Statement of Facts in Support of Arrest Warrant contained in the record refer to this witness as Mauricio Ordonez, we refer to him as such in this opinion.

[5] Ordonez testified that he was familiar with the BTL gang and the Riverside gang but that neither he nor Rodriguez were members.

[6] At trial, Ordonez identified Castillo by his nickname "Tito."

Ordonez concerning a prior inconsistent statement—specifically, that on January 8, 2010, the day after the beating, Ordonez contacted the police and told them that he saw Rodriguez "get beat to death."  Ordonez testified that his January 8 statement to the police was not true, that he had not seen any part of the beating, and that he lied to the police so that his friend "could get justice."  During defense counsel's cross-examination of Ordonez concerning his January 8 statement to the police, the following exchange occurred:[7]

> Q.    Then you went on to say that you observed Tito, Tito Castillo, *repeatedly hit the victim with a long stick*, that was a lie too, wasn't it?
>
> A.    Yes.
>
> Q.    Now, I believe on direct examination that you testified that your reason for going into the police department and lying was that you wanted to seek justice for your friend?
>
> A.    Yes.

(Emphasis added).

The jury subsequently found Castillo guilty of second degree murder and checked a box on the verdict form finding that Castillo "carried, displayed, or used a deadly weapon."  Based on the jury's finding, the trial court reclassified

[7] The trial transcript reflects that during cross-examination, defense counsel was apparently reading from Ordonez's statement to the police.  The State objected to defense counsel "reading something not in evidence, improper impeachment," and to defense counsel "reading from something that's not a prior sworn statement."  The trial court overruled the objections.

Castillo's conviction for second degree murder from a felony of the first degree[8] to a life felony pursuant to section 775.087(1)(a).[9] Castillo was sentenced to life, and this appeal ensued.

## II.    ANALYSIS

On appeal, Castillo argues that the State failed to prove that he used or had actual possession of a deadly weapon during the commission of the crime and, therefore, the trial court erred in reclassifying his second degree murder conviction from a felony of the first degree to a life felony pursuant to section 775.087(1)(a).[10]

---

[8] Section 782.04(2) provides in part that "murder in the second degree . . . constitutes a felony of the first degree."

[9] Section 775.087(1)(a) states as follows:

> (1) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
>
> (a) In the case of a felony of the first degree, to a life felony.

[10] Both Castillo and the State agree that Castillo's conviction could not be reclassified based on a co-defendant's possession of a deadly weapon. Indeed, the law is well-settled that that section 775.087(1) does not permit vicarious enhancement. See State v. Rodriguez, 602 So. 2d 1270, 1272 (Fla. 1992) ("We hold that, when a defendant is charged with a felony involving the 'use' of a weapon, his or her sentence cannot be enhanced under section 775.087(1) without evidence establishing that the defendant had personal possession of the weapon

6

Castillo concedes that the issue of the sufficiency of the evidence as to the allegation that he used or possessed a deadly weapon was not raised below as his counsel did not object to the verdict form or preserve the issue in any way. Because the issue was not preserved, the standard of review is fundamental error.

In Monroe v. State, 191 So. 3d 395, 401 (Fla. 2016), the Florida Supreme Court, in addressing fundamental error, explained that "reviewing courts should proceed with caution when considering whether a fundamental error has occurred." The Supreme Court further explained, "[w]e have *even more narrowly* applied the fundamental error doctrine to alleged errors of insufficient evidence." Id. (emphasis added). Indeed, there are only two instances where an unpreserved challenge to the sufficiency of the evidence can be reviewed. Id.; see also F.B. v. State, 852 So. 2d 226, 230 (Fla. 2003) ("[W]e hold that, with two exceptions, a defendant must preserve a claim of insufficiency of the evidence through timely challenge in the trial court."). The first exception concerns death penalty cases and is therefore not applicable here. See F.B., 852 So. 2d at 230. The second exception "occurs when the evidence is insufficient to show that a crime was committed at all." Id.

during the commission of the felony."); Connolly v. State, 172 So. 3d 893, 910 (Fla. 3d DCA 2015) ("We agree with the defendant that his conviction for second degree murder could not be reclassified under section 775.087(1) based on a co-defendant's possession or use of a weapon or firearm during the commission of the murder."); see also Campbell v. State, 935 So. 2d 614, 618 (Fla. 3d DCA 2006); Chase v. State, 74 So. 3d 1138, 1139 (Fla. 2d DCA 2011).

7

> Thus, an argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be preserved. Such complete failure of the evidence meets the requirements of fundamental error- i.e., an error that reaches to the foundation of the case and is equal to a denial of due process.

852 So. 2d at 230-31; accord Monroe, 191 So. 3d at 401 (stating that an unpreserved challenge to the sufficiency of the evidence can be reviewed "when there is insufficient evidence that a defendant committed *any* crime") (emphasis in original); see, e.g., Troedel v. State, 462 So. 2d 392, 399 (Fla. 1984) (finding that "a conviction imposed upon a crime totally unsupported by evidence constitutes fundamental error"); Stanton v. State, 746 So. 2d 1229, 1230 (Fla. 3d DCA 1999) (same).

Here, the State argues that Castillo's conviction was properly reclassified based upon his actual possession of a stick, and that this conclusion is supported by Ordonez's acknowledgement during cross-examination of his prior inconsistent statement made to the police on January 8, the day after Rodriguez's murder. Specifically, the State relies upon Ordonez's response of "yes" to defense counsel's question: "Then you went on to say that you observed Tito, Tito Castillo, repeatedly hit the victim with a long stick, that was a lie too, wasn't it?" The State argues that the jury did not find Ordonez's testimony that he lied to the police to be credible, that they "apparently believed his original statement," and

8

that this constitutes substantive evidence that Castillo was in possession of a stick during the attack.

Under section 90.801(2)(a), Florida Statutes (2015), prior inconsistent statements can be admitted as substantive evidence "if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . [i]nconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition." § 90.801(2)(a), Fla. Stat. (2015). The law is well-established that "a statement given under oath during a police investigation is not a statement given at an 'other proceeding' and consequently is not admissible as substantive evidence under section 90.801(2)(a)." Pearce v. State, 880 So. 2d 561, 569 (Fla. 2004) (citing State v. Delgado-Santos, 497 So. 2d 1199 (Fla. 1986)); see also S.L. v. State, 993 So. 2d 1108, 1110 (Fla. 4th DCA 2008) (holding that police officer's testimony as to the victim's prior inconsistent statements made to him on day of the alleged crime were not admissible as substantive evidence and could not be used to support a finding of guilt). Here, Ordonez's prior inconsistent statement to police was not given at a trial, hearing, or other proceeding or in a deposition. Accordingly, while Ordonez's prior inconsistent statement could be used for impeachment, Ordonez's prior inconsistent statement cannot constitute admissible substantive evidence.[11]

III.   CONCLUSION

Because the State presented no substantive evidence that Castillo used or had personal possession of a deadly weapon, i.e., a stick, during the commission of the crime, we find that the trial court erred in reclassifying Castillo's conviction from a felony of the first degree to a life felony pursuant to section 775.087(1)(a). Accordingly, we affirm Castillo's conviction, but reverse his sentence and remand for resentencing without reclassification under section 775.087(1). Castillo shall be present at the resentencing.

Affirmed in part; reversed in part and remanded for resentencing.

---

[11]   Although not necessary to this Court's analysis to reverse Castillo's reclassification under section 775.087(1)(a), we note that the State's argument that Castillo's conviction was properly reclassified suffers from an additional infirmity. In a criminal prosecution, even where a prior inconsistent statement is admissible, "a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt." State v. Moore, 485 So. 2d 1279, 1281 (Fla. 1986); see also Santiago v. State, 652 So. 2d 485, 486 (Fla. 5th DCA 1995) (where the only evidence offered by the state to substantiate the charge of attempted murder is the prior inconsistent statement of its own witness, the evidence is insufficient to support a conviction). In the case at issue, the State presented no testimony, other than Ordonez's acknowledgment on cross-examination of his prior inconsistent statement, to support the State's allegation that Castillo used or possessed a stick or deadly weapon during the commission of the crime. As such, even if Ordonez's prior inconsistent statement was admissible as substantive evidence, Ordonez's testimony alone would be insufficient as a matter of law to prove Castillo's actual use or possession of a deadly weapon.