# Third District Court of Appeal

## State of Florida

Opinion filed February 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-0706
Lower Tribunal No. F19-8128B
_____

**Byron Turner,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Richard Hersch, Judge.

Daniel J. Tibbitt, P.A., and Daniel Tibbitt, for appellant.

John Guard, Acting Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellee.

Before EMAS, GORDO and LOBREE, JJ.

EMAS, J.

## INTRODUCTION

Byron Turner appeals his convictions and sentences, following a jury trial for armed robbery and conspiracy to commit armed robbery.

Turner contends that the trial court erred in denying his motion for judgment of acquittal because he did not actually commit the robbery, but was "merely present," and the State did not introduce sufficient evidence that Turner knew about the robbery in advance or that he intended to participate in it. Turner further contends the trial court abused its discretion in admitting certain evidence, and in denying his motion for judgment of acquittal regarding the jury's interrogatory finding that he actually possessed a firearm during the commission of the crime.

For the reasons that follow, we affirm the judgments and sentences for the crimes of armed robbery and conspiracy to commit armed robbery, finding that the evidence presented at trial, viewed in a light most favorable to upholding the jury's verdict, was sufficient to support Turner's guilt for the crimes charged.

## FACTUAL AND PROCEDURAL HISTORY

The victim, Anis Atilus, worked at a laundromat. Atilus and his co-workers participated in an office lottery pool, and on April 25, 2019, Atilus won the lottery. He placed the $2,300 in winnings in his wallet.

At about 4:00 p.m. that same day, co-defendant Antwan Washington—a co-worker of Atilus—sent a text message to Davon Potter (another co-defendant): "I'm going to hit y'all up around 7:00 be on deck easy money." Later that evening, at about 7:50 p.m., Atilus was leaving the laundromat when he was approached by two men, each armed with a gun. The men pointed their guns at Atilus and ordered him to hand over his wallet. He did so. The two assailants then got into a silver Hyundai sedan, which fled the scene. Neither of the two assailants was the driver of the car. Atilus immediately called 911 to report the armed robbery, and phone records established Atilus made this call at about 7:53 p.m.

One minute later—at 7:54 p.m.—police issued a BOLO for the silver Hyundai sedan, and at 7:55 p.m., a detective driving near the location of the robbery observed a car matching the BOLO. The detective initiated a traffic stop and pulled the vehicle over at a nearby gas station located less than two miles from the laundromat where Atilus was robbed of his wallet and $2300.

Four men were in the silver Hyundai when it was stopped by the detective: Turner was in the driver's seat; co-defendant Billy Dozia was in the front passenger's seat; co-defendant Davon Potter (who received the text message from Washington earlier that day) was in the rear passenger's side

seat; and co-defendant Antwan Washington (a co-worker of Atilus) was in the rear driver's side seat.

The police brought Atilus to the gas station, where he identified two of the men as the armed robbers: Turner and Potter. Police later determined, however, that the identification of Turner as one of the two armed robbers was a mistake, because his clothing did not match the armed robbers' clothing, as captured in the surveillance video outside the laundromat. The police determined that all four people in the vehicle (Turner, Dozia, Potter and Washington) participated as principals in the armed robbery, with Washington as the "inside" man; Turner as the getaway driver; and Dozia and Potter as the two men who robbed Atilus at gunpoint.

The police searched each of the four men and found the victim's wallet in Dozia's possession. However, the $2300 in lottery winnings was not in the wallet. Instead, the four men had the following amounts of cash in their possession:

| | |
|---|---|
| Turner: | $605 in cash |
| Dozia: | $606 in cash |
| Potter: | $580 in cash |
| Washington: | $575 in cash |

4

To recap, the four men had a combined total of $2366 in cash (with one of them in possession of Atilus' wallet) when they were stopped by police, two miles from the laundromat and five minutes after Atilus was robbed at gunpoint of his wallet containing $2300.

In a subsequent search of the vehicle, police discovered one firearm in a hidden compartment under the front passenger seat, and another firearm under the cushioning of the driver's seat.

At the police station, Turner was interviewed by police and gave a post-Miranda statement denying any involvement in the robbery. Turner claimed he was with his girlfriend at the time of the robbery and that he later picked up the other three men when they called and asked for a ride.

Turner was charged with, inter alia, armed robbery and conspiracy to commit armed robbery.[1] Turner and Potter were tried together. At trial, the State's theory of the case—and respective roles of the four men—was as follows: Turner was the getaway driver; Washington was Atilus' co-worker who, aware that Atilus had won the office lottery, hatched the plan to rob Atilus of the $2300, and sent the text to Potter. Washington remained in the

---

[1] Following the verdict, Turner also pled guilty to the charge of possession of a firearm by a convicted felon (bifurcated from the trial of the other two offenses), conditioned upon an agreement that the judgment and sentence for that offense would be vacated should Turner prevail in this appeal.

car so he wouldn't be recognized by Atilus; Dozia was one of the two gunmen seated in the front passenger seat; and Potter, the other gunman, was seated in the back seat behind Turner.

As to possession of the firearm, the State posited that when Potter returned to the car after robbing Atilus, he passed the firearm to Turner (the driver) who then hid the firearm underneath the "stuffing" or cushioning of the driver's seat, where it was discovered by police when they searched the vehicle. The State contended that Turner was the only individual sitting in the driver's seat during the relevant time period, and was the only person who would have been able to place the firearm in the location where it was discovered by police.

At trial, Turner's theory of defense was that he was not in the car at the time of the robbery, but at his sister's house. Some friends dropped him off and returned about three or four hours later to pick him up. It was soon thereafter that Turner was simply (as defense counsel described it) "swept up in a police dragnet." Although Turner did not testify, his sister testified as an alibi witness, explaining he was at her house before and during the crime, and that, while at her house, someone took her brother's vehicle. The car was later returned, she said, and Turner then left with the men.

6

In response to this alibi testimony, the State presented a rebuttal case, which included a recording of Turner's post-arrest statement in which he stated he was with **his girlfriend** (rather than his sister) at the time of the robbery and that he later picked up the other three men when they called and asked for a ride.

Following deliberations, the jury found both defendants guilty as charged. The jury further found by verdict interrogatory that, in the course of committing the robbery, Turner actually possessed a firearm.

At the sentencing, the trial court determined that Turner qualified as a prison release reoffender and a habitual violent felony offender. On the offense of armed robbery with a firearm, the court sentenced Turner to life in prison as a Prison Releasee Reoffender[2] with a ten-year minimum mandatory under the 10/20/Life statute.[3] On the charge of conspiracy to commit armed robbery, the trial court sentenced Turner to twenty-five years in prison with a ten-year minimum mandatory as a habitual violent felony

---

[2] See § 775.082(9), Fla. Stat. (2019).

[3] See § 775.087(2)(a)1.c., Fla. Stat. (2019) (providing that if a person is convicted of robbery and "during the commission of the offense, such person actually possessed a 'firearm,'" such person "shall be sentenced to a minimum term of imprisonment of 10 years.")

offender.[4] The defendant was ordered to serve the sentences concurrently. This appeal followed.

## STANDARDS OF REVIEW

The standard of review for a motion for judgment of acquittal is de novo. Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002); Giralt v. State, 935 So. 2d 599, 601 (Fla. 3d DCA 2006). This court generally reviews a trial court's ruling on the admission of evidence for an abuse of discretion. Rimmer v. State, 59 So. 3d 763, 774 (Fla. 2010). However, to the extent that the admissibility of evidence turns on a legal question or the construction of a statute or rule, we review the issue de novo. Hernandez v. CGI Windows & Doors, Inc., 347 So. 3d 113, 118 (Fla. 3d DCA 2022).

## ANALYSIS AND DISCUSSION

### 1. Denial of the Motion for Judgment of Acquittal

Turner contends the trial court erred in denying his motion for judgment of acquittal because he did not actually commit the robbery and there was insufficient evidence he knew about it in advance or participated in it. However, Turner failed to advance this argument in his motion for judgment of acquittal. In fact, the defendant's theory of the case—presented through his alibi evidence at trial—was that there was insufficient proof Turner was

---

[4] See § 775.084(4)(b), Fla. Stat. (2019).

8

even present during the armed robbery (i.e., driving the car).  Turner did not raise the "mere presence" argument he raises here in support of his claim that the State presented insufficient evidence to prove Turner's knowledge of and intent to participate in the armed robbery.

Because the issue was not preserved below, this court can review the claim only for fundamental error. H.R. v. State, 298 So. 3d 1217, 1222 (Fla. 3d DCA 2020) ("[A]n argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be preserved. Such complete failure of the evidence meets the requirements of fundamental error-i.e., an error that reaches to the foundation of the case and is equal to a denial of due process.") (quoting F.B. v. State, 852 So. 2d 226, 230-31 (Fla. 2003)).

Turner has failed to establish fundamental error in the instant case. Monroe v. State, 191 So. 3d 395, 400 (Fla. 2016) ("[U]nless the evidence was insufficient to show that _any_ crime had been committed, claims of insufficient evidence must be properly preserved.") (emphasis added) (citing F.B., 852 So. 2d at 230) (additional citations omitted).  At a minimum, the State presented sufficient evidence to prove Turner was an accessory after the fact to the crime of armed robbery when he hid the firearm in the cushion of his seat and received a "cut" of the $2300 taken at gunpoint from Atilus.

<u>See</u> § 777.03, Fla. Stat. (2019). Thus, the failure to properly preserve the "mere presence" claim is fatal to the argument.[5]

Even if we were to reach the merits of Turner's claim, however, his argument would prove unavailing, as there was sufficient evidence to support the jury's finding of guilt for the charges of armed robbery and conspiracy to commit armed robbery.

"'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (2019). And if, "in the course of committing the robbery the offender carried a firearm or

---

[5] We reject Turner's suggestion that we reach the merits by finding, as a matter of law, that trial counsel rendered ineffective assistance of counsel in failing to preserve this issue for appeal.  In 2021, the Florida Supreme Court announced in <u>Steiger v. State</u>, 328 So. 3d 926, 928 (Fla. 2021):

> [W]e hold that section 924.051(3), Florida Statutes (2020), which prohibits raising an unpreserved claim of error on direct appeal absent a showing of fundamental error, precludes appellate review of unpreserved claims of ineffective assistance of trial counsel on direct appeal. Such ineffective assistance of counsel claims may therefore only be raised on direct appeal in the context of a fundamental error argument. Ineffective assistance of counsel claims relying upon the less-demanding *Strickland* standard are properly considered upon the filing of a legally sufficient postconviction motion in the trial court.

other deadly weapon, then the robbery is a felony of the first degree punishable by imprisonment for a term of years not exceeding life imprisonment . . . ." § 812.13(2)(a); see also Fla. Std. Jury Instr. (Crim.) 15.1.

A person commits the crime of conspiracy where he "agrees, conspires, combines, or confederates with another person or persons to commit any offense," in this case armed robbery. § 777.04(3), Fla. Stat. (2019). See also Leigh v. State, 967 So. 2d 1102, 1104 (Fla. 4th DCA 2007) ("In order [t]o establish a conspiracy and appellant's participation in it, the state must prove an express or implied agreement or understanding between two or more persons to commit a criminal offense, and an intention to commit that offense.") (quotation omitted).

Finally, "[t]o convict under a principals theory, the State is required to prove that the defendant had a conscious intent that the criminal act be done and . . . the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime." Hall v. State, 100 So. 3d 288, 289 (Fla. 4th DCA 2012) (quotation omitted). For instance, a getaway driver "who has prior knowledge of the criminal plan and is waiting to help the robbers escape is clearly guilty of the robbery under a principals theory." Id. (emphasis omitted). In contrast, "mere knowledge that an offense

11

is being committed nor presence at the scene of the crime and flight therefrom are sufficient to establish participation with the requisite criminal intent." Id. (quotations omitted).

Among the evidence presented at trial to support the jury's determination of guilt and show Turner's prior knowledge and intent to participate in the robbery are the following:

● Washington's text to Potter (co-defendant) stating, "I'm going to hit **y'all** up around 7:00 be on deck easy money." (Emphasis added). Washington's reference to "y'all," the State contends, is a reference to the other co-defendants, including Turner.

● Five minutes after the robbery, police observed the getaway car less than two miles from the scene of the robbery. Turner was driving the car (and the three other co-defendants were in the car) at the time it was stopped by police.

● One of the two firearms used in the robbery was found underneath the cushioning of the driver's seat, where Turner was seated.

● Atilus was robbed of $2300. $2300 evenly split four ways equal $575. A search of the four defendants revealed a total of $2366 in cash in their collective possession: Washington had $575; Potter had

12

$580; Dozia had $606 (as well being in possession of Atilus' wallet); and Turner had $605.

● Turner gave a post-*Miranda* statement in which he denied any knowledge of or involvement in the robbery, claiming he was with his girlfriend at the time of the robbery and later picked up the other three men when they called and asked for a ride. Yet his post-arrest statement to police was inconsistent with the timing of the robbery, as he and the co-defendants were stopped in the getaway vehicle five minutes after the armed robbery and less than two miles from where the crime took place;

● Turner's post-arrest statement to police was inconsistent with the trial testimony of his sister, who claimed Turner was with her (and not with his girlfriend) at the time of the robbery.

Viewing this evidence (together with the remaining evidence in the record) in a light most favorable to the jury's determination, we hold that the evidence was sufficient to establish Turner's guilt for the crimes of armed robbery and conspiracy to commit armed robbery. See Williams v. State, 305 So. 3d 673, 678 (Fla. 3d DCA 2020) ("[T]he intent with which an act is taken is generally not capable of direct proof, and is most often proven indirectly, by circumstantial evidence."); Green v. State, 90 So. 3d 835, 837

13

(Fla. 2d DCA 2012) ("Intent, a state of mind, is rarely susceptible of direct proof. It is almost always shown solely by circumstantial evidence."); T.S. v. State, 675 So. 2d 196, 198 (Fla. 4th DCA 1996) ("The elements of assistance of the perpetrator and intent may be proved by a combination of surrounding circumstances from which a trier of fact can reasonably infer defendant's guilt.") (quotation omitted); A.B.G. v. State, 586 So. 2d 445, 447 (Fla. 1st DCA 1991) ("Mere presence at the scene, knowledge of the crime, and flight are insufficient to justify a conviction.  Where the state presents additional evidence, however, which contradicts the defendant's theory of innocence, the trial court's decision to deny a motion of acquittal must be affirmed.") (internal citation omitted); compare with Garcia v. State, 899 So. 2d 447 (Fla. 4th DCA 2005) (finding appellant's presence in the van and proximity to the stolen property found in the van was insufficient circumstantial evidence to prove intent).  See also Bush v. State, 295 So. 3d 179, 184 (Fla. 2020) (eliminating special standard of review in circumstantial evidence cases).

### 2. Imposing a ten-year minimum mandatory sentence for actual possession of a firearm

We find no error in the trial court's imposition of the ten-year mandatory minimum for actual possession of a firearm pursuant to the 10/20/Life

statute, section 775.087(2)(a)1., Florida Statutes (2019).[6] The State presented evidence that the firearm was under Turner's seat and that the only way it could have been placed in the "cushioning" was by someone seated in the driver's seat. The evidence established Turner was driving the getaway car when it was stopped by police five minutes after the robbery and less than two miles from the scene of the crime. At that time, the gun was hidden in the cushioning under Turner's seat. The State's theory at trial was that one of the two gunmen returned to the car after robbing Atilus at gunpoint, and handed Turner the gun to conceal it under the cushioning of the driver's seat, where it was eventually discovered by police. This evidence was sufficient to support the jury's finding that Turner actually possessed the firearm in the course of committing the armed robbery. Compare Pickard v. State, 777 So. 2d 1216, 1216-17 (Fla. 5th DCA 2001) (affirming conviction

---

[6] As to the armed robbery, Turner was sentenced to life in prison with a ten-year mandatory minimum for actual possession of a firearm. See § 775.087(2)(a)1., Fla. Stat. (2019) (requiring imposition of a ten-year mandatory minimum sentence for certain enumerated offenses if, "during the commission of the offense, such person actually possessed" a 'firearm'"). This claim raised by Turner applies only to the ten-year mandatory minimum portion of his sentence; it does not otherwise affect the life sentence imposed on Turner as a principal to the armed robbery. Because the acts of co-defendants Dozia and Potter (each of whom robbed Atilus at gunpoint) are treated as the acts of Turner, actual possession of the firearm by Turner is not required for his conviction as a principal to the charge of armed robbery. Stripling v. State, 645 So. 2d 589 (Fla. 3d DCA 1994); Freeny v. State, 621 So. 2d 505 (Fla. 5th DCA 1993).

15

for possession of a firearm by a convicted felon: "One of the guns was found in the seat occupied by Pickard, and evidence was introduced indicating that the gun was in that seat when he was in the vehicle."); see also Sinclair v. State, 50 So. 3d 1223, 1225-26 (Fla. 4th DCA 2011) ("When the contraband is found in an area over which the defendant had exclusive possession, the defendant's knowledge of the contraband and ability to maintain control over it may be presumed."); see, e.g., Barlatier v. State, 26 So. 3d 29, 32 (Fla. 3d DCA 2009) (affirming conviction and sentence for unlawful possession of a firearm by a convicted felon: "The facts, as established through the detectives' observations and testimony, excluded the possibility that someone other than the defendant could have placed the gun under the driver's seat between the time the vehicle was approached and pulled over until it was searched, or that someone other than the defendant could have placed the gun under the driver's seat while the search was ongoing. In accordance with the detectives' observations and conclusions, the only one that could have had possession and control over the gun was the defendant.").

We find no merit in the remaining arguments raised by Turner.

Affirmed.

16